IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 21-CR-392 (RCL) |
| | : | |
| | : | |
| ERIK SCOTT WARNER | : | |

### DEFENDANT'S TRIAL BRIEF ON RELEVANCY OF MAP ATTACHED TO OPERATIONAL PLAN

    Comes now, Defendant, Erik Scott Warner, and files this Trial Brief on Relevancy regarding the map attached to the CDU Operational Plan. Specifically, Captain Mendoza testified that she used the United States Capitol Police CDU Operational Plan (hereinafter OPS Plan) dated January 5, 2021 in preparation for the events of January 6, 2021 in her role with the Civil Disturbance Unit (CDU) and that she was familiar with that document. (Exhibit 1, filed under seal). After being shown the document, she stated that the map on the back of the Ops Plan was originally how the perimeter was to be set up but that there were changes made to that map at some unspecified point in time. Importantly, Captain Mendoza testified that the red line map, Gov't. Ex. 402, admitted over defendant's

1

objection, was the map she saw and used *prior to* January 6th to establish the perimeter around the Capitol for the events of January 6th.

This Court, while previously denying Defendant Warner's motion in limine as to the red lined map purporting to show the restricted perimeter on January 6, 2021, stated that such a map may only be admissible with proper foundation laid by someone with firsthand knowledge of the creation of that map and what it purports to show. In response to such ruling, the defendant requested the ability to take Captain Mendoza on voir dire to show that she did not have first-hand knowledge of that map or the perimeter as it was set up on January 6th, 2021. Defendant's request was denied and the map was admitted as Gov. ex. 402. Captain Mendoza further testified that she did not walk the perimeter the morning of January 6th, but that she knew there were barricades-not necessarily exactly where they were placed.

What this Court may recall, and the Government is most certainly aware of, is that there is no possible way Captain Mendoza saw the red line map prior to January 6th, 2021 because that map was made after January 6th, 2021 as work product by the Government in anticipation of litigation in these cases.1  Indeed,

---

1 This Court may recall in the case *United States v. Leo Kelly*, 21-cr-708 (RCL), that the government entered into a stipulation regarding the red line map after their witnesses testified incorrectly about it being in existence prior to January 6, 2021. That stipulation, attached as exhibit 2, stated, "[t]hat map (Exhibit 1) was actually specifically created after January 6, 2021 to reflect the general whereabouts of the physical barriers, implements, signs,

Defendant Warner anticipated the real possibility that the government would proffer a witness who might offer inaccurate testimony about this map and moved in limine to exclude such map unless a foundation could be made as to how it was made, when it was made and what reliable method was used for its creation. Without such a foundation, the reliability of that map is in question and the Defendant should have the opportunity to challenge it with the presentation of facts and witnesses showing that another map was in existence on January 5th, 2021 (The Ops Plan Map, Defendant's exhibit 103d) and was widely circulated to law enforcement as part of an Ops Plan of that date. The jury has now been presented with inaccurate testimony about the creation and time of existence of the restricted perimeter red lined map. This red lined map, Gov. Ex 402, is not a reliable statement of what the restricted perimeter was prior to January 6th without foundation because it was not in existence on that date.

By contrast, The Ops Plan shows a relevant restricted perimeter that was in effect starting at least on January 5th, 2021. The Plan itself talks about the establishment of a security perimeter of bike rack barricades for the events on January 6th and how the area around the Capitol would be enforced that day with

---

obstructions, fencing, etc., that existed before the incident at the U.S. Capitol on January 6, 2021. The parties stipulate that there exists another map attached to the Civil Disturbance Unit Operational Plan, before implementation, from a January 5, 2021 report." (Exhibit 2, stipulation from 21-cr-708).

regard to "current permitted" events on Capitol Grounds.

Defendant Warner sought to admit this Ops Plan (Defendant's Ex. 103) through Captain Mendoza, who was well aware of this plan and used it as part of her regular duties for preparation and planning purposes for the events of January 6, 2021. The government objected on relevancy grounds and the court sustained the objection. Through this Ops Plan, and its admission, Defendant Warner sought relevant testimony regarding what was, at least on paper, a restricted perimeter much different than the red lined map testified to by Captain Mendoza. This map was in effect as late as January 5, 2021, and had already been in effect from at least the period of January 3-5th. There was no testimony by Officer Mendoza that the map attached to the Ops plan was ever officially changed. Said another way, there is no evidence that this map, defense exhibit 103d, was ever distributed to law enforcement personnel with changes. Additionally, the Ops Plan itself, describes permitted events taking place on the grounds that day and who The Capitol Police would allow inside that restricted perimeter on January 6, 2021.

There are two issues with regard to relevancy that the Defendant raises. First is regarding the details of what the actual restricted perimeter was on January 6th, 2021 and the "posted or cordoned off" areas that Defendant Warner is accused of entering and remaining inside. Second is the issue of which groups The Capitol

4

Police were told would be allowed to enter the restricted perimeter. Captain Mendoza testified that people were not allowed into the restricted perimeter. Yet, the January 5, 2021 Ops Plan places that testimony in issue. Defendant Warner should be allowed to introduce that plan as impeachment material against Captain Mendoza's testimony.  The issue of who would be granted access, or was allowed that day to demonstrate inside the purported restriction, is a highly relevant inquiry to the charges in this case. It is Defendant's contention that these questions seek relevant information and support the defendant's contention that the restricted perimeter was not as it has been represented by government on the red lined map and in testimony.  Furthermore, regardless of whether changes were made or not to the map just prior the event, the Ops Plan informed members of the Capitol Police that counter-protesters would be allowed to enter within the perimeter to demonstrate.

Captain Mendoza has no first had knowledge of the perimeter on January 6th, 2021.  That is, she testified that she wasn't there when it was set up not did she walk the perimeter to see if it matched the map.  Nevertheless, she was allowed to testify that the map was exactly how that perimeter was established on January 6, 2021.



*Figure 1*

She also testified that members of the public were not able to enter and remain on Capitol grounds past the restricted perimeter.  Defendant Warner contends that the Ops Plan, in effect for January 6th, 2021, not only sheds doubt on the accuracy of any such testimony, but also creates doubt about the location and placement of "posted or cordoned off" areas at the Capitol and the grounds that day.  This fact goes directly to the heart of the charges against Mr. Warner and his co-defendants.  Any testimony by Captain Mendoza that changes were made to the "Official Use Only" map after the Jan. 5, 2021 Ops Plan was circulated to the

entire CDU goes to the weight of that evidence not the admissibility.

The Ops Plan contains a section labeled "Current Permitted Events for this operational period" and a March entitled "Donald, You're Fired March on DC" is the first such listed event. (Ops Plan, p. 2.)   The location of this event is listed as the "U.S. Capitol to White House" from 1200-1500 hours with the attendance listed as "Unknown.".  A description of the event states the following:

> On January 6th, 2021 at 12:00pm, Eastern Time, We the People will convene at the steps of the United States Capitol to witness this momentous occasion. Upon the declaration [sic] the results of the 2020 elections, held on November 3rd, 2020, We the People will proceed, peacefully and safely, from the Capitol Building to the White House to deliver the message to Mr. Trump, "Donald, You're Fired!

Ops Plan at p. 2

The map attached to the Ops Plan differs significantly from the redlined map the government admitted through Captain Mendoza.  (*See* Figure 2 below). The Ops Plan map,  Attached as Exhibit 3, is marked "For Official Use Only" and dated January 3-9, 2021.  It is a significantly more reliable depiction of the perimeter established by the Capitol Police at or near the time of the events of January 6, 2021 than the red lined map that was not even in existence at that time and it is the only "official" map the government has provided to defendant in discovery that was in existence prior to January 6, 2021.  That alone makes it

highly relevant and probative to what the perimeter was going to be that day.



*Figure 2*

Under the Federal Rules of Evidence, relevant evidence is admissible unless an applicable rule of law, like the Fifth Amendment, provides otherwise. Fed. R. Evid. 402.[2] Evidence is relevant, and thus admissible, if it tends to make a fact "of consequence in determining the action" more or less probable. *Id.* 401.

Because the fact that law enforcement agencies planned to allow members of the public to gather "at the steps of the United States Capitol" during the early afternoon of January 6, 2021, is "of consequence in determining" one or more charges against Defendant Warner makes evidence tending to prove that fact relevant and therefore admissible. Here's why:

Warner is charged with violating 18 U.S.C. § 1752(a)(1) by entering or remaining in a "restricted building or grounds without lawful authority." Given the statutory definition of "restricted building or grounds," this charge depends on the premise that Warner entered an area near the Capitol that was "posted, cordoned off, or otherwise restricted" by appropriate authorities. *Id.* § 1752(c)(1).[3]

If, in fact, the Capitol Police planned to allow a "permitted event" organized by someone calling themselves "I Approve This Message"—with "unknown"

---

2 While the government maintains that the Operations Plan is not relevant, it has not established that any rule of law prohibits the Court from receiving such evidence if it is relevant.
3 Warner also is alleged to have violated 18 U.S.C. § 1752(a)(2) by certain conduct relating to a restricted building or grounds, which also depends upon the existence and scope of such restricted territory.

attendance—to gather on the Capitol Steps at noon on January 6 and for hours thereafter, it would undermine the factual premise of the prosecution's charges against Warner. If, as the Operational Plan appears to tend to prove, that law enforcement agencies at the Capitol were prepared to allow unidentified members of the public—without tickets or any limitation in number or kind—to access such an area in the immediate vicinity of the Capitol, the premise that such territory satisfies the statutory definition of "restricted" cannot hold. Any argument that the map or outline of the perimeter was altered or expanded or reduced in size has not effect on the fact that the CDU was preparing to allow counter-protesters on the Capitol steps.

Defendant Warner argues that it is germane to the elements of the Section 1752 charges whether the federal government took some measures to restrict an area. [*See also* 21-cr-244(CKK), ECF No. 121 at 8 (Feb. 16, 2023).] It is also germane whether individual law enforcement officers were ordered to 'stand down' in order to 'un-'restrict Capitol grounds. And that testimony may go to whether Capitol grounds were in fact 'restricted' on January 6, 2021. *Id*. At 9. By the same reasoning, it is "of consequence" in determining whether those grounds "were in fact 'restricted' on January 6" whether law enforcement officers had planned to

allow unidentified members of the public to convene on or around the Capitol's steps that afternoon.[4]

The fact that the map may have been changed prior to January 6th by unknown members of the Capitol Police and Secret Service, as Officer Mendoza seemed to say, does not preclude introduction of the Ops Plan itself. In fact, such testimony merely goes to the weight of the evidence, not its admissibility. Even if there is testimony at trial that only a certain number of permits were approved for January 6th protesters, and all were outside the purported red line perimeter, that does not account for why, on January 5th, the entire CDU of the Capitol Police was informed through the OPS Plan of a totally different restricted perimeter map and of a counter-protest (Donald You're Fired) to be allowed on the steps of the Capitol that day. That argument justifies testimony to establish facts, rather than foreclosure of this relevant factual topic.

Mr. Warner possesses a Sixth Amendment right to mount a defense to this prosecution. *See, e.g. Faretta v. California*, 422 U.S. 806, 818 (1975) ("In short, the [Sixth] Amendment constitutionalizes the right in an adversary criminal trial to

---

4 This evidence of plans to allow unknown members of the public to gather on the Capitol steps during the afternoon of January 6, 2021, tends to make the facts of this case different from those in many other Section 1752 cases, such as cases in which the "trier of fact could presume as a matter of common knowledge that an ordinary citizen without any known authorization would be allowed inside the White House or on its grounds." *U.S. v. Jabr*, 4 F.4th 97, 105 (D.C. Cir. 2021).

make a defense as we know it."). "Few rights," in fact, "are more fundamental than that of an accused to present witnesses in his own defense." *Taylor v. Illinois*, 484 U.S. 400, 408 (1988). This Court should allow testimony regarding the Ops Plan and the relevant restricted areas referenced in the document, including the "Donald, You're Fired March on DC", other "Permitted Demonstration Activity" listed on page 13 and the map attached to the document labeled "Security Perimeter Joint Session January 3-9, 2021."

Respectfully submitted,

By: Kira Anne West

　　　/s/　　*Kira Anne West*　　
Kira Anne West
DC Bar No. 993523
712 H. Street N.E., Unit 509
Washington, D.C. 20002
(202)-236-2042
kiraannewest@gmail.com
Attorney for Erik Warner

Certificate of Service
I certify that a copy of the forgoing was filed electronically on ECF for all parties of record on this 18th day of October, 2023.
　　　/s/　*Kira West*　　
Kira Anne West
Attorney for Warner

12